# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-0345V

| | |
|---|---|
| TERESA LEE,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: November 25, 2025 |

*Jonathan Joseph Svitak*, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.

*Joseph Douglas Leavitt*, U.S. Department of Justice, Washington, DC, for Respondent.

### **RULING ON ENTITLEMENT**[1]

On January 8, 2021, Teresa Lee filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), which she amended on July 10, 2023. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on September 8, 2020. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I find the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Respondent has argued that Petitioner is not entitled to compensation (ECF No. 34), and the parties have now fully briefed entitlement (ECF Nos. 39, 40, 41). For the reasons set forth below, I find that record evidence preponderantly establishes that Petitioner suffered from limited range of motion ("ROM"), experienced residual effects of her injury for more than six months, and has satisfied the remaining requirements for entitlement.

### I.  Relevant Factual History
#### A. Medical Records

Petitioner received a flu vaccine in her right arm on September 8, 2020. Ex. 15D. Two weeks later (September 22, 2020), she attended a virtual appointment with certified nurse practitioner ("CNP") Lindsay Corll. Ex. 11 at 22. Petitioner stated at this time that immediately after vaccination, she had tingling in her right fingers and upper extremity. *Id*. at 27. The pain improved a day after vaccination, but worsened the day after that. *Id*. She was now having "significant pain" and weakness. *Id*. She was assessed with adverse effect of flu vaccine and given oral steroids. *Id*. at 28.

A month later (October 23, 2020), Petitioner followed up with CNP Corll. Ex. 11 at 16. She stated that the oral steroids had improved her symptoms, but they returned after she completed the course. *Id*. She was now treating with over-the-counter anti-inflammatory medication, but continued to have significant difficulty with ROM and activities of daily living. *Id*. On examination, she had full ROM of her upper extremities bilaterally, but with significant discomfort on the right side. *Id*. at 18. Petitioner was given medication and referred to an orthopedist. *Id*.

Petitioner saw orthopedist Michael Miladore, M.D., on November 2, 2020. Ex. 13 at 9. She reported right shoulder pain that began two months earlier. *Id*. She rated her pain seven out of ten, explaining that the pain was worse with overhead activities and reaching behind her back. *Id*. On examination, she exhibited right shoulder swelling and tenderness, but full ROM. *Id*. at 11. Dr. Miladore diagnosed strain of muscle, fascia, and tendon, and recommended physical therapy ("PT") and anti-inflammatory medication. *Id*. at 12.

A week later (November 9, 2020), Petitioner underwent a PT evaluation of her right shoulder. Ex. 4 at 6. She again rated her pain seven out of ten and reported difficulty elevating her shoulder. *Id*. at 7. On examination, her right shoulder exhibited reduced ROM in scaption and abduction compared to her left shoulder. *Id*. The therapist assessed her as displaying moderate weakness and decreased ROM.

Petitioner followed up with Dr. Miladore on December 16, 2020. Ex. 13 at 19. She had been doing PT and taking Tylenol, without improvement. *Id*. On examination, her

right shoulder ROM was full, but with pain. *Id*. at 21. Dr. Miladore administered a steroid injection and recommended continued PT. *Id*. at 22.

Petitioner was discharged from PT and given a home exercise program on January 5, 2021. Ex. 13 at 14. The record states that her treatment was discontinued because she "decline[d] to continue care." *Id*.

On February 22, 2021 – now five and a half months after vaccination – Petitioner returned to Dr. Miladore. Ex. 13 at 15. She stated that the steroid injection helped 75% for a week, but her symptoms then returned. *Id*. She rated her pain six out of ten. *Id*. On examination, her right shoulder ROM was again full, but painful. *Id*. at 17. Dr. Miladore recommended an MRI. *Id*. at 18.

Thereafter, during the remainder of 2021 and early months of 2022, Petitioner continued to follow up with CNP Corll for other concerns, without seeking treatment for her shoulder. Ex. 12 at 22-100. At several of these appointments she was noted to have full ROM in her shoulders. *Id*. at 34, 48, 56, 73, 82, 94.

On July 29, 2022 – over a year and a half after Petitioner's last treatment for shoulder pain – Petitioner saw CNP Corll for other health concerns, and reported that she continued to experience right shoulder discomfort, but did not want further evaluation. Ex. 12 at 22-23. Three months later (October 28, 2022), Petitioner saw CNP Lindsay Landis to follow up on health concerns, adding that she had "recurrent symptoms in the right shoulder" and planned to increase her home PT exercises and may return to her orthopedist. *Id*. at 11. On examination, she had full ROM in both shoulders. *Id*. at 13.

Over a year later (September 25, 2023), Petitioner returned to Dr. Miladore for right shoulder pain. Ex. 16 at 10. She rated her pain six out of ten, and reported that her pain interfered with routine activities, and had worsened in the last two months. *Id*. On examination, her right shoulder ROM was full, but painful, with positive impingement signs. *Id*. at 12. Dr. Miladore administered a steroid injection and recommended PT. *Id*. at 13.

The following day (September 26, 2023), Petitioner underwent a PT evaluation for her right shoulder. Ex. 16 at 6. She related her pain to a flu vaccination in 2020, stating that her "pain improved until a few months ago." *Id*. She rated her pain six out of ten. *Id*. at 7. She returned for additional PT sessions in October 2023. *Id*. at 3, 15.

### B. Testimonial Evidence

Petitioner filed testimonial evidence in support of her claim. Exs. 1, 17. She states that her shoulder pain persisted from February 2021 through October 2022. Ex. 17 at ¶ 6. She did not seek treatment for her shoulder during this time because she "was experiencing some unrelated health issues that required more immediate attention." *Id*.

Petitioner states that every time she saw CNP Corll, they discussed her right shoulder, and Petitioner reported that her symptoms were still present, but she was trying to manage them on her own. Ex. 17 at ¶ 7. She created a PT area in her basement with PT exercise printouts and bands, and used this area two to three times a week. *Id*. at ¶ 5. Eventually, her home remedies and exercises were inadequate to address her symptoms, so she returned to her orthopedist. *Id*. at ¶ 8.

## II.     The Parties' Arguments

Petitioner argues that she received consistent care from her primary care provider, physical therapist, and orthopedist for five months and 15 days after vaccination. Petitioner's Motion for Ruling on the Record, filed Aug. 6, 2024, at *9 (ECF No. 39) ("Mot."). At her February 2021 appointment (five and a half months after the onset of her injury), she reported a pain level of six out of ten, explaining that the December 2020 steroid injection provided one week of relief before her symptoms returned. *Id*. at *9-10. She reported difficulty with overhead activities and reaching behind her back, similar to her previous visit. *Id*. at *10. On examination, she exhibited tenderness over the lateral aspect of her shoulder, painful ROM, and positive impingement signs. *Id*. Her orthopedist recommended an MRI. *Id*.

Petitioner argues that it is highly unlikely that Dr. Miladore would recommend an MRI if he believed her symptoms were resolved. Mot. at *10. Rather, it is much more likely that he noted that her symptoms were unchanged from her previous visit, and considered an MRI the next logical step for a patient who was not improving with conservative treatment. *Id*.

Petitioner argues that the record demonstrates that she exhibited reduced ROM. Mot. at *15. She emphasizes the November 2020 PT record showing that her right shoulder active ROM was reduced by 20 degrees compared to her left shoulder. *Id*. The fact that she demonstrated full ROM at some other visits "does not make the findings during her therapy evaluation any less probative" of reduced ROM. *Id*.

Respondent argues that Petitioner has not satisfied the statutory severity requirement. Respondent's Response, filed Oct. 7, 2024, at *5-7 (ECF No. 40) ("Resp."). He asserts that other than primary care and orthopedic appointments, she attended only one PT session and received one steroid injection in the six months after onset of her injury. *Id*. at *5. At her February 2021 appointment, five and a half months after onset, she had full ROM, although with pain. *Id*. at *6. Thereafter, she did not seek further shoulder treatment for 17 months, while she continued to seek medical care for other concerns. *Id*.

Respondent asserts that "the records in the instant case unambiguously establish that petitioner's alleged shoulder pain had resolved prior to meeting the six-month severity

4

requirement." Resp. at *7. The factual basis for this claim is not readily apparent, however, and Respondent does not cite any facts or records in support thereof.

Respondent also argues that Petitioner "only exhibited limited ROM on four occasions," suggesting that this prevents her from establishing that she exhibited limited ROM. Resp. at *8. He adds that "*[a]side from these four occasions*, the record overwhelmingly demonstrates that she had full ROM bilaterally." *Id*. (emphasis added).

Petitioner replies that Respondent's analysis on severity contains contradictory statements, and does not address Petitioner's condition at her February 2021 orthopedic appointment. Petitioner's Reply, filed Oct. 21, 2024, at *2 (ECF No. 41) ("Reply"). Petitioner emphasizes that at this appointment, she reported a pain level of six out of ten and complained of the same difficulties as her last visit. *Id*. Her orthopedist recommended an MRI, demonstrating that Petitioner's shoulder was not "back to normal," and "was highly unlikely to resolve in the next two weeks." *Id*. at *3.

Petitioner notes that Respondent concedes that her medical records document limited ROM, yet still contests this criterion. Reply at *3-4. Petitioner emphasizes that the fact that she demonstrated full ROM during some of her medical appointments does not make the findings of limited ROM during her PT evaluation any less probative. *Id*. Petitioner states that it is "unclear whether Respondent is challenging the veracity of the November 9, 2020 physical therapy record or simply asking" that I ignore it. *Id*.

### III.   Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

5

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[3] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D).

"[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

6

26, 2022) (finding severity requirement met where the petitioner sought care for four months, followed by fifteen-month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where petitioner did not seek additional treatment after the five-month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

### IV. Ruling on Entitlement

#### A. Severity Requirement

The record establishes that, more likely than not, Petitioner experienced residual effects of her injury for more than six months. She treated her shoulder pain for five and a half months – just short of the six-month threshold – before a gap. At the February 2021 appointment, she continued to report a pain level of six out of ten, and reported that the steroid injection received at her prior visit provided only one week of relief, and her orthopedist recommended an MRI. And there is *no* affirmative evidence showing that her shoulder pain resolved soon after this appointment.

Under these circumstances, it is more likely that Petitioner's right shoulder pain continued for *at least* two weeks afterward. In reaching this conclusion, I do not rely on Petitioner's 2022 and 2023 care, which may be relevant to damages.

#### B. Limited Range of Motion

The record also preponderantly establishes that Petitioner suffered from limited ROM. At her November 2020 PT evaluation, her right shoulder ROM was reduced compared to her left shoulder, and her therapist diagnosed her with decreased ROM. This is sufficient to meet this QAI. There is no requirement that a petitioner demonstrate limited ROM at *every* appointment, as Respondent appears to suggest. The fact that Petitioner's ROM limitations were mild and did not persist bears on damages, but does not prevent her from meeting the QAI.

#### C. Factual Findings Regarding QAI Criteria for Table SIRVA and Other Entitlement Requirements

Respondent does not contest the remaining SIRVA QAI criteria, and I find that they are satisfied. There is no evidence that Petitioner had a pre-vaccination right shoulder condition, or another condition or abnormality, that would explain her symptoms after vaccination. Exs. 3, 11. Her symptoms were limited to her right shoulder (where she received the flu vaccine). Exs. 4, 11, 13. The record also contains preponderant evidence that the remaining requirements for entitlement are satisfied. Petitioner received a covered vaccine in the United States (Ex. 15D), and has not previously collected an award

8

or settlement of any civil action for damages for her vaccine-related injury (Ex. 1 at ¶¶ 19, 20).

## Conclusion

Based on my review of the record as a whole, I find that it is more likely than not that Petitioner suffered from limited ROM and experienced the residual effects of her injury for more than six months. I also find that all SIRVA Table requirements are preponderantly met, as are all statutory requirements for entitlement. Therefore, Petitioner's motion for a ruling on the record that she is entitled to compensation is **GRANTED**.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master